


# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5860 | **DATE** | 4/26/2002 |
| **CASE TITLE** | General Binding Corp. Vs. George McBride et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion to dismiss is granted.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | APR 30 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 10 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | | |
| WAH | courtroom deputy's initials | 02 APR 29 AM 10:59 Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GENERAL BINDING CORPORATION, )
)
       Plaintiff, )
)
vs. ) No. 01 C 5860
)
GEORGE MC BRIDE, VINALRAE H. )
MC BRIDE, JEAN M. LOW, DAVID )
LOGAN, LISA M. LOGAN and )
VINALRAE GARMON, )
)
       Defendants. )

DOCKETED
APR 3 0 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff General Binding Corporation (GBC) filed a complaint alleging that defendants George McBride, Vinalrae McBride, Jean Low, David Logan, Lisa Logan and Vinalrae Garmon breached a stock acquisition agreement and warranties made in that agreement by failing to disclose certain workers' compensation insurance liabilities. Defendants now move, alternatively, to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), for transfer to the United States District Court for the District of Massachusetts as the more appropriate venue, 28 U.S.C. §1406, or to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6). For the following reasons, defendants' motion to dismiss is granted.

## BACKGROUND

On April 17, 1997, the parties entered into an agreement under which plaintiff acquired all outstanding shares of Baker School Specialty, Inc. (Baker) from defendants. From March 1993 to April 1997, Baker had obtained workers' compensation insurance from Wausau Underwriters Insurance Company (Wausau) to cover Baker's Massachusetts-based employees.

/0

On several occasions during this coverage period, Wausau billed Baker for premium adjustments. Plaintiff alleges that approximately $200,000 of workers' compensation premiums remained unpaid at the time of the acquisition, but defendants failed to disclose these liabilities. To the contrary, plaintiff alleges that defendants warranted that no undisclosed liabilities existed and agreed to indemnify GBC should any arise.

Plaintiff is a Delaware corporation, headquartered in Illinois. None of defendants is an Illinois citizen. Baker does business in Illinois, but is not an Illinois corporation, nor does it have an Illinois office. The insurance policies in question were issued outside of Illinois and did not cover any Illinois workers. None of defendants traveled to Illinois during the negotiations, but they did direct telephone calls, letters and faxes to Illinois.[1] The materials sent to Illinois included discussion of the Wausau policies. The final agreement included a choice-of-law clause, selecting Illinois law to govern any disputes arising with respect to the contract. Defendants also agreed to indemnify plaintiff for liabilities arising from breaches of any representations or warranties. The parties appointed an Illinois bank as escrow agent, and plaintiff performed, in part, by delivering $1 million to that agent. Defendants then contacted the Illinois bank to direct disbursement of the proceeds.

The contract, in §8(a), sets different survival periods for representations and warranties made in different sections. Representations with respect to Environment, Health and Safety regulations, §4(z), survive for the full statutory limitations period. Representations with respect to Insurance, §4(s), only survive for two years.

---

[1] Most of the activities ascribed to defendants were performed by Logan individually. Because he was defendants' designated agent, his actions are attributed to all defendants for jurisdictional purposes.

## DISCUSSION

Under Illinois law personal jurisdiction is permitted to the full extent of constitutional due process, *see* Weiden v. Benveniste, 699 N.E.2d 151, 153 (Ill. App. 3d Dist. 1998), *citing* 735 ILCS 5/2- 209(c), which requires that an individual have sufficient minimum contact with the forum state before he will be subject to the jurisdiction of that state's courts. *See* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). There is no contention that defendants are subject to general jurisdiction in Illinois. We are concerned solely with specific jurisdiction, which requires that the suit "arise out of" or "be related to" defendants' minimum contacts with the forum state. *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984). In determining whether the minimum contacts requirement is satisfied, we focus on whether defendants have "purposefully established minimum contacts within the forum State." Steel Warehouse of Wisconsin, Inc. v. Leach, 154 F.3d 712, 714 (7th Cir. 1998), *citing* Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985). Crucial to this inquiry is whether defendants could reasonably anticipate being haled into court in Illinois because they have purposefully availed themselves of the privilege of conducting activities here. *See id.*

Who initiated the transaction, where the transaction was entered into, and where the performance of the contract took place can all be significant factors in determining whether defendants purposely availed themselves to Illinois. *See* Kalata v. Healy, 728 N.E.2d 648, 654 (Ill. App. 1st Dist. 2000). Plaintiff, not defendants, initiated contact between the parties here.

Formation and performance are more ambiguous. All negotiations were done by mail, by phone or electronically. The specific representations in question, those regarding the Wausau insurance policies, were mailed to an Illinois address. Directing mail or phone calls

to a state are contacts that must be considered for jurisdictional purposes. *See, e.g.,* Culligan Int'l Co. v. Wallace, Ross & Sims, 650 N.E.2d 565, 568 (Ill. App. 1st Dist. 1995) (West Virginia attorney handling case in West Virginia for Illinois client 'purposefully directed' activities to Illinois by writing letters and making phone calls to client in Illinois); McGee v. Riekh, 442 F.Supp. 1276, 1279 (D.C. Mont. 1978) (doctor subjected himself to jurisdiction by rendering diagnosis via telephone calls to forum state), *cited in* Weiden, 699 N.E.2d at 153; *but see* Brady v. Burtt, 979 F.Supp. 524, 529 (W.D. Mich. 1997) (finding phone and mail negotiations insufficient to confer jurisdiction). Further, this contract was at least partially performed in Illinois. The parties appointed an Illinois bank as escrow agent, and defendants accepted a payment through that bank. Minimal as these contacts may seem, they cannot be called "fortuitous." Defendants knew they were dealing with an Illinois-based company and intentionally made contact with that company in Illinois. *Cf.* Veeninga v. Alt, 444 N.E.2d 780 (Ill. App. 1st Dist. 1982) (finding Indiana doctor who unknowingly treated Illinois patient in Indiana office not subject to personal jurisdiction in Illinois).

The most significant contacts, however, are the provisions of the contract itself.[2] The parties agreed to apply Illinois law to any disputes arising from the contract. Although a choice-of-law clause by itself is generally not sufficient to confer personal jurisdiction, it is a relevant factor. *See* Burger King, 471 U.S. at 481. Courts have frequently found a choice-of-law clause among the most compelling evidence of intent. "By choosing to apply Illinois law to this transaction, defendants sought to invoke the protections and benefits of the law of Illinois. ... By selecting the law of Illinois, defendants obviously intended that a breach of the

---

[2] Plaintiff attached the stock purchase agreement to the complaint, so we may consider it in deciding the motion to dismiss. *See* Caraluzzi v. Prudential Secs., Inc., 824 F.Supp. 1206, 1210 n. 1 (N.D.Ill.1993).

contract would have consequences under Illinois law, and presumably also intended to utilize the protections of that law." Ronco, Inc. v. Plastics, Inc., 539 F.Supp. 391, 396 (N.D. Ill. 1982); *see also* Leasemark v. Peoples Nat'l Fin. Network, Inc., 1989 WL 81808 at *2 (N.D. Ill. July 11, 1989). Moreover, defendants agreed to indemnify plaintiff, an Illinois-headquartered company, for any breached warranties. Defendants could have reasonably foreseen that GBC would be sued in its home state, and that their indemnity obligations could bring them to Illinois.

Under these circumstances a reasonable party could have foreseen being haled into court in Illinois. This dispute arises from the contract in question, and specifically from the representations about the Wausau policies mailed to Illinois. This is sufficient to sustain personal jurisdiction.

Turning to the merits, defendants argue that this action is time-barred. The agreement defines, in §8(a), the duration of all representations and warranties, stating specific limitations periods for certain contractual provisions, and setting a default two-year period for all others. Parties may, by contract, define the limitations period for any representations. *See* Latek v. Leaseamerica Corp., 1992 WL 170546 at *3 (N.D. Ill. July 16, 1992), *aff'd* 7 F.3d 238 (7th Cir. 1993). Representations in §4(z) survive for the duration of the relevant statutes of limitations. The contract is silent with respect to §4(s), meaning the default two-year period applies. The decisive question is whether this action arises under §4(z), Environment, Health and Safety, or §4(s), Insurance.

Section 4(s) includes, by its own terms, disclosures regarding "property, casualty, liability, and workers' compensation coverage and bond and surety arrangements." One of the items listed is "(v) a description of any retroactive premium adjustments or other loss-

sharing arrangements." This is exactly the nature of the present dispute. Plaintiff alleges that defendants failed to disclose unpaid retroactive premium adjustments.

Section 4(z) deals more generally with safety regulations. Its provisions deal mostly with environmental issues and hazardous chemicals, but it also includes a general representation that Baker "does not have any Liability ... for any illness of or personal injury to any employee or other individual, or for any other reason under any Environmental, Health and Safety Laws." Plaintiff has not alleged that Baker had any outstanding liabilities of the type governed by §4(z) at the time of the purchase agreement. Wausau issued an audit premium adjustment invoice to Baker for approximately $160,000 on March 5, 1997, and additional adjustments totaling nearly $210,000 for claims arising before April 22, 1997. Premium adjustments are based on claims already filed with and paid by the insurer. Once the insurer had acted on those claims, Baker no longer faced any liability for the underlying injury. Plaintiff nowhere alleges that Wausau terminated the coverage for non-payment, that Baker was ever uninsured (and thereby in violation of Massachusetts law) or that Baker had any outstanding injury claims as of the transaction date. Plaintiff attempts to characterize the unpaid premiums as a liability under a safety law. We disagree. A goal of workers' compensation is certainly to provide a safety net for workers even in the absence of any environmental, health and safety violations. It is dubious that an outstanding balance on an insurance policy, even coverage that is legally mandated, would constitute a violation of a state safety law. While a state-imposed fine for failing to carry insurance, or a tort claim not covered by it could be considered liabilities under a safety law, this is simply a liability under an insurance contract. The fact that state law mandates that Baker carry such a policy does not transform the contractual liability to one arising under a safety law.

We find that this matter is governed by 4(s). This suit deals with an unpaid insurance policy, not a violation of a safety law. Section 4(s) specifically mentions workers' compensation, and refers to directly to the issue of premium adjustments. This agreement was signed on April 17, 1999. The two-year limitations period which governs 4(s) expired April 17, 1999. Plaintiff did not file this suit until July 30, 2001, more that two years after the limitations period expired.

## CONCLUSION

For the forgoing reasons, defendants' motion to dismiss is granted.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

April 26, 2002.